472 So.2d 803 (1985)
Bob GRAHAM, Governor of the State of Florida, George Firestone, Secretary of State, Jim Smith, Attorney General, Gerald A. Lewis, Comptroller, William Gunter, State Treasurer, Ralph D. Turlington, Commissioner of Education, and Doyle E. Conner, Commissioner of Agriculture, As and Constituting the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, Appellants,
v.
John R. EDWARDS, Sr., Appellee.
No. 85-184.
District Court of Appeal of Florida, Third District.
July 2, 1985.
Rehearing Denied August 6, 1985.
*804 Bruce Barkett, Tallahassee, for appellants.
Albury, Morgan & Hendrick, Key West, Messer, Rhodes & Vickers and Terry E. Lewis and Cari L. Roth, Tallahassee, for appellee.
Richard Gentry, Steve Lewis, Tallahassee, for Florida Home Builders Ass'n as amicus curiae.
Before SCHWARTZ, C.J., and HENDRY and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
The appellant/state brings this interlocutory appeal from an order denying its motion to dismiss or in the alternative to transfer venue and granting appellee John Edwards' motion for preliminary injunction. The two issues on appeal are whether the trial court abused its discretion in granting a preliminary injunction against the Board of Trustees of the Internal Improvement Trust Fund (Board) and whether venue is proper only in Leon County, Florida.
The facts giving rise to these issues are as follows. John Edwards is a developer involved with the development of the Sheraton Key Largo, a hotel and resort conference center in Monroe County. He submitted to the Board a request for a lease to construct a commercial docking facility on the sovereign submerged lands behind the proposed Sheraton. Subsequently, the Board adopted a resolution directing the Department of Natural Resources (DNR) *805 not to consent to the use of sovereign submerged lands within Monroe County or to seek the Board's approval for any additional submerged lands leases in the county until the Board was presented with a report on John Pennekamp State Park's coral reefs and Key Largo Coral Reef Marine Sanctuary. The resolution continued in effect until an emergency rule codifying it was filed on November 14, 1984. Fla. Admin. Code Rule 16Q-21.041. The rule provides for a moratorium on leases until rules are adopted for the Florida Keys-Monroe County Aquatic Preserve or the revised Monroe County Comprehensive Plan is adopted, whichever occurs first.
Mr. Edwards' counsel advised the DNR that Mr. Edwards intended to construct a private dock of less than 1,000 square feet over the sovereign land behind the proposed Sheraton as section 403. 813(2)(b), Florida Statutes (1983), preempts the requirement to obtain state consent to construct such a dock. This statute provides, in pertinent part, as follows:
403.813 Permits issued at district centers; exceptions. 
* * * * * *
(2) No permit under this chapter, chapter 373, or chapter 253, chapter 61-691, Laws of Florida, or chapter 25214 or chapter 25270, Laws of Florida, 1949, shall be required for activities associated with the following types of projects; however, nothing in this subsection shall relieve an applicant from any requirement to obtain permission to use or occupy lands owned by any water management district in its governmental or proprietary capacity or from complying with applicable local pollution control programs authorized under this chapter or other requirements of county and municipal governments:
* * * * * *
(b) The installation and repair of mooring pilings and dolphins associated with private docking facilities and the installation of private docks, any of which docks:
1. Has ... 1,000 square feet or less... .
The DNR advised counsel for Mr. Edwards by letter that such activity was unauthorized and subject to the enforcement provisions of Chapter 253, Florida Statutes (1983), including damages and fines. When the letter from the Board's attorney was received, Mr. Edwards ceased building his dock. He had at that time purchased various materials for the dock, mobilized a work crew and begun construction. His expenditures amounted to $16,450.
Mr. Edwards brought suit in Monroe County Circuit Court for declaratory and injunctive relief against the state. The state made a motion to dismiss or in the alternative to transfer venue. Mr. Edwards made a motion for a preliminary injunction. The trial court denied the state's motion and granted Mr. Edwards' motion for a preliminary injunction. Subsequently, the state filed this interlocutory appeal.
The state contends that the trial court erred in granting a preliminary injunction as the requirements therefor were not met. It also contends that venue is proper only in the Second Judicial Circuit in and for Leon County, Florida.
We will respond to the state's venue argument first. It has been the established common law of Florida that venue in civil actions brought against the state or one of its agencies or subdivisions properly lies where the state, agency or subdivision maintains its principal headquarters, unless there is a waiver or exception to that venue privilege. Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977). An exception to this state venue privilege is that a suit for the protection of the rights of the plaintiff may be entertained in the county where the invasion is threatened or has occurred. This exception to the rule is called the "sword-wielder doctrine", so named because it applies when the plaintiff's action is in the nature of a shield against the state's thrust. Hancock v. Wilkinson, 407 So.2d 969, 970 (Fla. 2d DCA 1981); Graham v. Vann, 394 So.2d 178 *806 (Fla. 1st DCA 1981); Department of Revenue v. First Federal Savings & Loan Association, 256 So.2d 524 (Fla. 2d DCA 1971); see Carlile v. Game and Fresh Water Fish Commission, 354 So.2d at 365-66. An explanation of the sword-wielder doctrine is given in Graham v. Vann, 394 So.2d at 179:
One recognized exception to the rule exists where an unlawful invasion of a lawful right secured to the plaintiff by the constitution or laws of the jurisdiction is directly threatened in the county where the suit is instituted. Parties seeking relief from alleged threats to their personal and property rights by the operation of unconstitutional acts of an agency of the state may bring suit in the county where the alleged wrongs are threatened or alleged to have been committed.
The question which arises here is whether the state was the initial sword-wielder. We believe this question must be answered in the affirmative. Mr. Edwards had acquired materials, assembled workers, given notice to the DNR and begun to build a private dock, based upon the authority of section 403.813(2)(b) that such dock was exempt from the Board's regulation. The DNR responded that such activity was unauthorized and threatened damages and substantial fines if work on the dock did not cease. Given these facts, it appears that the state made the initial thrust.
The burden is on the appellant to demonstrate that the trial judge abused his discretion in refusing a change of venue. Florida East Coast Railway Co. v. Hardee, 167 So.2d 68, 69 (Fla. 3d DCA 1964). The state has not met this burden. We find that suit was properly instituted in Monroe County where Mr. Edwards' lawful rights were allegedly being threatened.
As to the state's second contention that the elements necessary for a preliminary injunction have not been established, we find we must agree. The requirements for establishing the right to preliminary injunctive relief are as follows:
(a) the likelihood of irreparable harm, and the unavailability of an adequate remedy at law, (b) the substantial likelihood of success on the merits, (c) that the threatened injury to petitioner outweighs any possible harm to the respondent and, (d) that the granting of preliminary injunction will not deceive [sic] the public interest.
Department of Business Regulation v. Provende, Inc., 399 So.2d 1038, 1041 (Fla. 3d DCA 1981); see Oxford International Bank and Trust, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 374 So.2d 54 (Fla. 3d DCA 1979), cert. dismissed, 383 So.2d 1199 (Fla. 1980); State, Department of Health and Rehabilitative Services v. Artis, 345 So.2d 1109 (Fla. 4th DCA 1977). In this case, Mr. Edwards has failed to show the substantial likelihood of success on the merits.
At common law, all navigable waters and lands under such waters were held by the sovereign for the benefit of the people. Merrill-Stevens Co. v. Durkee, 62 Fla. 429, 57 So. 428 (1912). The state's authority over sovereign lands has been made part of the Florida Constitution. Article X, Section 11, states:
Sovereignty lands.  The title to lands under navigable waters ... is held by the state, by virtue of its sovereignty, in trust for all the people... . Private use of portions of such lands may be authorized by law, but only when not contrary to the public interest.
Title to sovereign lands was held by the state itself until legislative action vested title in the Board. The Board currently holds title pursuant to section 253.03, Florida Statutes (1983).[1]
A riparian owner has no specific title of any kind to sovereign lands held in public trust by the Board. Morgan v. Canaveral Port Authority, 202 So.2d 884 (Fla. *807 4th DCA 1967); Anderson v. Collins, 111 So.2d 44 (Fla. 2d DCA 1959).
Our construction of section 403.813(2)(b), Florida Statutes (1983), on which Mr. Edwards has relied, is determinative of the likelihood of Mr. Edwards' success on the merits in the circuit court. In construing section 403.813(2)(b), we follow the rule that statutes in derogation of the common law must be construed very strictly. Carlile v. Game and Fresh Water Fish Commission, 354 So.2d at 364. Using this well established rule as our guide, we find that the statute's use of the word "permit" refers to an exemption from the state's regulatory functions only, and does not refer to an exemption from the state's proprietary powers. Consent to erect structures on sovereign submerged lands involves the state's proprietary interest, as owner of the land. Nowhere in the relevant statutes does the legislature refer to any power of the Board to issue permits. The statutes refer, rather, to the "approval or authorization" of the Board. § 403.922, Fla. Stat. (Supp. 1984). Section 403.813(2) recognizes the distinction between a permit and consent to use land. It exempts certain projects from permit requirements and then provides that although a permit from a water management district is not required, "[n]othing in this subsection shall relieve an applicant from any requirement to obtain permission to use or occupy land owned by any water management district." Clearly, the legislature did not intend "[n]o permit ... shall be required" to mean that a project is exempt from all other limitations as to the use of state-owned lands. While a project may not need a water management district permit, it still must have the district's permission to use its land.
Another rule of statutory construction supports our decision. The rule is that statutes on the same subject matter are to be read in harmony with each other, without destroying their evident intent. Mann v. Goodyear Tire & Rubber Co., 300 So.2d 666 (Fla. 1974). Section 253.77, Florida Statutes (Supp. 1984), requires that prior to any construction or excavation on state-owned lands, an applicant must have received from the Board "the required lease, license, easement, or other form of consent authorizing the proposed use... ." The only way to read this statute in harmony with section 403.813(2) is to adopt a narrow construction of the word "permit" and find that it does not refer to a lease, license, easement, or other form of consent to occupy land.
As a consequence, the Board has the authority to prohibit the building of a private dock on sovereign submerged land in Monroe County. Since Mr. Edwards has not shown a substantial likelihood of success on the merits, the preliminary injunction must be reversed.
The interlocutory order appealed is affirmed in part and reversed in part and the cause remanded for further proceedings in conformity with this opinion.
NOTES
[1] Section 253.03(1) provides:

The Board ... is ... charged with the acquisition, administration, management, control, supervision, conservation, protection, and disposition of all lands owned by, or which may hereafter inure to, the state... .