COPE, Judge
(dissenting).
I respectfully dissent.
Appellee Leslie Eisenberg, who was plaintiff below, is the President of Yellow Cab Corporation. He acts as the authorized agent for certain holders of Dade County taxicab licenses. See Metropolitan Dade County Code § 31-82.
Metropolitan Dade County regulates for-hire motor vehicles, including taxicabs. See Metropolitan Dade County Code § 31-81 — 31-115. In 1983 the County Commission established by resolution the Airport Region Taxicab Service Program, referred to as “ARTS.” Under this program, each year the County issues permits to twenty-five taxicabs, chosen by lottery. Permit holders have special authorization to provide short-haul service for a flat rate.
The County has promulgated a document entitled “General Terms and Conditions,” which governs the ARTS program. Licensees who wish to participate must submit an application for an annual drawing and pay an application fee. The first twenty-five licensees selected receive a one-year permit. The next seventy-five licensees are placed on a standby list for backup service.
For the 1990 cycle, the Dade Consumer Services Department issued registration forms which indicated that the forms would be accepted through July 15, 1990, and that forms received after July 15, 1990 would be ineligible for the drawing. Prior to the July 15 deadline, the Department realized that July 15 fell on a Sunday, when County offices are closed. The Department extended the deadline through Monday, July 16, 1990 and gave telephone notice to all potential applicants (the holders of existing taxicab licenses), including Eisenberg.
At the close of business on Friday, July 13, 1990, twenty applications for the lottery had been received, including applications for the nine licensees represented by Eisen-berg. On July 16 fifty-six additional applications were filed.
Two weeks went by. On July 30, three days before the long-scheduled August 3, 1990 lottery, Eisenberg filed a complaint for injunctive relief. He sought an order requiring Dade County to exclude from the August 3 drawing all applications received after July 15, 1990.
The trial court conducted an emergency hearing on August 2, 1990. Notwithstanding that the action was before the court on an application for a temporary injunction, the court proceeded to grant Eisenberg final relief. The court ordered Dade County to issue permits for each of the nine applications submitted by Eisenberg. The court denied the motion of another applicant to intervene. The court then ordered that the lottery could proceed with regard to the remaining sixty-seven applicants for the remaining sixteen permits.
For two separate reasons, the temporary injunction should be reversed. First, in order to obtain the temporary injunction Eisenberg had to show, among other things, a substantial likelihood of success on the merits. See, e.g., Oxford Int’l Bank & Trust, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, 374 So.2d 54 (Fla. 3d DCA 1979), cert. dismissed, 383 So.2d 1199 (Fla.1980). That he cannot do.
In this case, the County had the authority to set the deadline date for applications for the ARTS program. Since it had the authority to set the deadline in the first instance, it also impliedly had the authority to change that deadline. Cf. State ex rel. Johnson v. Vizzini, 227 So.2d 205, 207 (Fla.1969) (“Municipalities have only such powers as are granted ... in express terms or arise by implication as an incident to powers expressly granted.”). Indeed, Ei- *1024 senberg concedes that the County has the authority, where there is good reason to do so, to reject all of the applications entirely and begin the permitting process anew. Because of the confusion associated with the 1990 deadline date, the County could have started the entire process over. It was both reasonable and appropriate for the County to take the less drastic step of extending the deadline by one day. All of the potential applicants were given notice of the extension, and Eisenberg has shown no prejudice whatsoever to his rights by this extension.
Useful by way of loose analogy is Robinson Electrical Co. v. Dade County, 417 So.2d 1032 (Fla. 3d DCA 1982). In that case the County had advertised for competitive bids for a construction contract. The low bidder submitted a cashier’s check instead of the required bid bond. The County waived the irregularity, and this court agreed that the County had the power to do so. The court reasoned that the County had the power to waive minor irregularities in order to secure the lowest responsible offer, and noted that competitive bidding was not adversely affected. Id. at 1034. The County’s action “ ‘prevented no one from bidding, and all those that did bid were on equal footing, having the same opportunities as defendant company to read and utilize the instructions.’ ” (citation omitted). The same logic applies here, where the one-day extension of the deadline related only to the procedure employed, not to the substantive qualifications of the applicants. The extension of the deadline allowed for greater competition through the submission of applications by a larger segment of the taxicab industry, and placed all applicants on equal footing.
Eisenberg places principal reliance on State ex rel. Ervin v. Smith, 160 So.2d 518 (Fla.1964). That case is inapposite, as it deals with what was formerly the statutory period in which a notice of appeal had to be filed following entry of judgment.[1] Here, unlike Smith, we deal with a deadline which the County was empowered to set in the first instance, and which it surely had the power to change.
Eisenberg seeks to characterize the issue as being whether the July 15 deadline was automatically extended, as a matter of law, to the next business day, July 16. In so doing, Eisenberg misses the thrust of the County’s argument. While it is true that the County has cited certain rules and decisions which extend the time where a deadline falls on a weekend or holiday, see, e.g., Reynolds Aluminum & Masonry Contractors, Inc. v. Alexander, 449 So.2d 357 (Fla. 2d DCA 1984); Public Health Trust of Dade County v. Gabrilove, 349 So.2d 1228 (Fla. 3d DCA 1977); Page Heating & Cooling, Inc. v. Goldmar Homes, Inc., 338 So.2d 265, 266 n. 1 (Fla. 1st DCA 1976), those authorities are used by the County as an analogy to illustrate that it was reasonable to make an administrative decision to extend the deadline. In other words, the County’s exercise of its administrative discretion to extend the deadline was not arbitrary and capricious, because in analogous circumstances court decisions or rules make provision for extending such a deadline to the next business day. It is not the County’s position that the deadline was extended as a matter of law; it is the County’s position that (a) it had the power to change the deadline it had originally set, and (b) it was a reasonable exercise of administrative authority to do so. The County is entirely correct. The temporary injunction should be reversed outright.
Second, even if that were not so, the trial court nonetheless erred by entering this specific temporary injunction because it (a) awarded Eisenberg what amounts to final relief, not interim relief, and (b) needlessly scrambled the situation confronting the County and all of the other applicants. In general, “ ‘the purpose of a temporary injunction is not to resolve a dispute on the merits, but rather to preserve the status quo until the final hearing when full relief *1025 may be granted.’ ” Cordis Corp. v. Prooslin, 482 So.2d 486, 490 (Fla. 3d DCA 1986) (quoting Tiffany Sands, Inc. v. Mezhibovsky, 463 So.2d 349, 350-51 (Fla. 3d DCA 1985)).[2] Assuming arguendo that Eisen-berg had shown a substantial likelihood of prevailing on the merits, the trial court should have done no more than delay the lottery briefly pending final hearing. Instead, the trial court ordered the County to issue permits to the nine licensees represented by Eisenberg, whose applications had been submitted on July 13. The court then went on to order that all of the remaining applicants — the remaining eleven who had applied on July 13 and the remaining fifty-seven who had applied on July 16 — would participate in the lottery for the remaining sixteen permits. The order under review, in short, awarded final relief, not interim relief. It ordered the award of nine permits to Eisenberg and prescribed the method by which all remaining permits would be awarded. The order went far beyond the bounds necessary to preserve the status quo pending final hearing; it significantly altered the status quo.
Moreover, the temporary injunction is internally inconsistent. The only justification for granting nine permits to Eisen-berg’s licensees outright is the theory that only the applications submitted prior to July 15 were timely. Eisenberg had submitted nine of those applications; eleven applications by other licensees had also been submitted. Under the theory advanced by Eisenberg, and followed by the trial court, the only consistent approach would have been to award permits to all twenty of the applicants whose applications had been received prior to July 15.
That is not what the trial court did. Instead, the court ordered that the remaining eleven applications submitted prior to July 15 would be grouped together with the fifty-seven applications submitted on July 16, and all would participate in the lottery. If the trial court thought the July 16 applications were untimely, then the court could not logically order that they participate in the lottery. If the trial court thought the July 16 applications were timely, then the entire body of applications, including Eisen-berg’s applications, should have been ordered to participate in the lottery and Ei-senberg’s July 13 applications were not entitled to different treatment.[3]
A court in considering an application for a temporary injunction must undertake to balance the threatened injury to the applicant against the possible harm to the respondent or other adversely affected persons. See, e.g., Graham v. Edwards, 472 So.2d 803, 806 (Fla. 3d DCA 1985), review denied, 482 So.2d 348 (Fla.1986); Davis v. Joyner, 409 So.2d 1193, 1195 (Fla. 4th DCA 1982). The court passed beyond the bounds of permissible discretion when, through an effort to cure a perceived harm to Eisenberg, it in turn visited harm on the remaining body of applicants. Leaving aside the eleventh hour nature of this motion for temporary injunction (Eisenberg waited two weeks to seek relief, then filed on the eve of the lottery), the trial court at most should have briefly stayed the lottery pending final hearing.[4]
The temporary injunction should be reversed.

. The holding of the case has subsequently been abrogated by rule. See Fla.R.App.P. 9.110(b), 9.420(e).

. Qualifications to that general rule are set forth in Canal Authority v. Callaway, 489 F.2d 567, 576 (5th Cir.1974).

. In view of the impact of the court’s ruling on the other applicants, the motion to intervene should have been granted.

.While the trial court has the power to change its position on final hearing, that is not a justification for proceeding farther than necessary on an application for interim injunctive relief.