704 So.2d 702 (1998)
SECRET OAKS OWNER'S ASSOCIATION, INC., Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., Appellees.
No. 96-3230.
District Court of Appeal of Florida, Fifth District.
January 2, 1998.
*703 Ronald W. Brown, of Dobson and Brown, P.A., St. Augustine, for Appellant.
Robert C. Downie, II, of Brown, Ward & VanLeuven, P.A., Orlando, for Appellees Martin and Linda Parlato.
Lynette L. Ciardulli, Assistant General Counsel, Tallahassee, for Appellee State of Florida Department of Environmental Protection.
No Appearance for Appellee St. Johns County.

ON MOTION FOR REHEARING
GRIFFIN, Chief Judge.
The motion for rehearing filed by appellee, Department of Environmental Protection, is granted and the following opinion is substituted for the original opinion.
The Secret Oaks Owners' Association, Inc. ["Association"] seeks review of a final order of the Florida Department of Environmental Protection ["D.E.P."] denying the Association the right to apply for a permit to construct a dock on sovereignty land. Martin and Linda Parlato, intervenors below, own land adjacent to the site of the proposed dock. Because we conclude that the Association has a "sufficient title interest"[1] in the uplands for the purpose of seeking permission to construct a dock, we reverse.

BACKGROUND
This is the third appeal involving the Association and the Parlatos ["the Parlatos"] regarding an easement and dock usage rights associated with the Secret Oaks subdivision located in St. Johns County, Florida.[2] In March 1987, the developer filed a plat with the county. The plat dedicated a twenty-foot wide drainage easement to the county which ran along the south end of lot 10. In May 1987, the developer recorded a "Declaration, Grant of Easements, Assessments ...", which created in favor of all subdivision lot owners an easement over lot 10. This easement granted all lot owners in the subdivision the right of pedestrian access to the St. Johns River:
[o]n, over, along, and across those portions of Lots 10 and 11 of said subdivision which are subject to the 20' drainage easement as shown on said plat and running from Secret Oaks Place westwardly to the St. Johns River for the purpose of pedestrian access to and from the lots in said subdivision and said other parcel and to the St. Johns River and any dock now or hereafter located thereon and for the use and enjoyment of any such dock and any other improvements now or hereafter constructed within said easement by the Developer or by the owners, as hereinafter authorized.
At the time the developer recorded the easement, a main dock existed and was connected to lot 10. The developer had also constructed an auxiliary or crossover dock designed to provide access from the easement to this main dock.
In 1990, the Parlatos began negotiations with the developer for purchase of lot 10. During this period, the Parlatos contacted various lot owners and advised them that, after the sale, the other lot owners would be precluded from using the main dock and the auxiliary dock would be torn down. The Parlatos had been in contact with the State Department of Natural Resources ["D.N.R."], which advised the developer by letter dated May 31, 1990 that permitting problems existed with the auxiliary dock. The developer responded by canceling the sale to the Parlatos and returning their deposit monies to them.
Several months later, the Parlatos contacted the developer and advised him that they had made a mistake and that if the developer would sell them lot 10, they would be good neighbors. The developer agreed to sell the Parlatos the lot and the Parlatos agreed to pay the developer to negotiate an agreement with the other owners to clarify the easement *704 and to develop regulations concerning the use of the dock and pedestrian access.
Prior to the closing of the sale to the Parlatos, the Secret Oaks Subdivision Owners' Agreement ["Owners' Agreement"] was executed and recorded. This agreement between the developer, who retained title to lots 10 and 16, and the owners of the other fourteen lots in the subdivision, confirmed the rights of all lot owners to river access and set forth agreements regarding the use of and access to the docks. The Owners' Agreement explained that its purpose was to "reach a mutually binding agreement as to the use of the dock." The Owners' Agreement explained that, among other things, all lot owners would have access to the main dock, the Association would be responsible for its maintenance and repair, the Association would provide insurance for the dock, the Association could install benches and access steps to the water and that any other improvements to the dock would have to be approved by the Association. Parlato v. Secret Oaks Owners Ass'n, 689 So.2d 320 (Fla. 5th DCA 1997). The Association also acquired by assignment the developer's rights under the declaration. The Parlatos did not sign the Owners' Agreement.
Soon after the Parlatos' acquisition of lot 10, harmony disappeared. When the Parlatos applied to the Department of Natural Resources, the Department of Environmental Regulation and Army Corp of Engineers to construct a boat lift on the main dock, they were advised that the auxiliary dock was an unpermitted structure which would have to be removed. On April 1, 1992, the Parlatos had a crew come in and remove the auxiliary dock.
The Association then filed an action for, inter alia, declaratory and injunctive relief, seeking a determination of the lot owners' rights to use of the pedestrian easement and the dock structures. The trial court ultimately ruled that based upon the March 1991 Owners' Agreement, the Association members had the right to use the main dock and the right to reconnect an auxiliary dock to the pedestrian easement, assuming the Association obtained the requisite state and federal permits. The court found that the Parlatos had no right to remove the auxiliary dock and had not been compelled to do so by any governmental authority.
On appeal, this court affirmed.[3] Thereafter, the Parlatos filed a petition for supplemental relief, asserting that the Association had submitted an application to the D.E.P. for a permit to construct a new dock, not related to the main dock or auxiliary dock, extending into the St. Johns River from the easement. The Parlatos asserted that the Association did not have authority to build such a dock. The trial court denied the Parlatos' claim for relief. This court again affirmed the trial court's order.[4]

THIS CASE
In November 1994, the Association, through its agent, Environmental Services, Inc., filed an application with the D.E.P. for the necessary permits to construct the dock that was the subject of the previous appeal. This application sought both a dredge and fill permit under the provisions of Chapter 403, Florida Statutes, and permission from the State as owner of the submerged lands to construct a dock extending from the shoreline out into the St. Johns River.
On September 21, 1995, the D.E.P. issued a letter of intent to deny the petitioner's application for permission to construct the dock on sovereignty submerged lands. In its intent to deny letter, the D.E.P. stated:
The proposal is inconsistent with Chapter 18-21.004(3)(b), Florida Administrative Code (F.A.C.) which states,
"Application for activities on sovereignty lands riparian to uplands can only be made by and approved for the upland riparian owner, their legally authorized agent, or persons with sufficient title interest in uplands for the intended purpose."
The reason sufficient title interest is required is to ensure that the Board of *705 Trustees of the Internal Improvement Trust Fund will be able to lien the upland property to recover costs and fines associated with violations of the consent and/or removal of the structure. Past and current Board of Trustees' [of the Internal Improvement Trust Fund] policy has been and is to consider an easement an insufficient title interest to build a structure on sovereign lands unless the owner of the upland gives written consent for such use of the property, including the state's right to lien his uplands. In this case, where the upland owner refuses, consent must be denied by the Trustees.
Subsequent to its original intent to deny, the D.E.P. issued a "clarification" on February 28, 1996, which stated simply:
Riparian rights are held only by the title holder or the holder of a lease of the riparian uplands. See § 253.141, Florida Statutes. Thus, it is the Department's position that a holder of a mere easement does not have sufficient title interest in the uplands to make application for activities on sovereignty submerged lands.
Pursuant to Secret Oak's request, a formal hearing, pursuant to section 120.57(1), Florida Statutes, was convened on April 2, 1996, but the hearing officer concluded that there were no material issues of fact and ordered the case back to the agency for an informal hearing. The D.E.P. appointed the Director of State Lands ["the Director"] as hearing officer.
The Director issued a lengthy order stating that the issue to be resolved was whether the Association, as the holder of an easement, is among the class of persons who may file an application to conduct activities on state-owned sovereign submerged lands. He noted that Florida Administrative Rule 18-21.004(3)(b) (1996) defines that class as being limited to "the upland riparian owner, their legally authorized agent, or persons with sufficient title interest in uplands for the intended purpose." He then explained as follows:
... It is Petitioner's position that, as the holder of an easement, it possesses riparian rights and, thus, has the requisite standing to apply for and be granted the right to conduct activities on sovereign lands. It is Respondent's position that the legal interest held by Petitioner is not a "sufficient title interest in uplands for the intended purpose" as required by Rule 18-21.004(3)(b). Intervenors (Parlatos) argue that Petitioner has no riparian rights and, therefore, lack legal standing to even maintain the subject Petition.
3. Petitioner argues that it enjoys riparian rights as an incident of the easement granted under the Declaration. Petitioner relies primarily on Lanier v. Jones, 619 So.2d 387 (Fla. 5th DCA 1993) and Cartish v. Soper, 157 So.2d 150 (Fla. 2d DCA 1963), for the proposition that an easement holder can possess riparian rights. Respondent cites Hume v. Royale[Royal], 619 So.2d 12 (Fla. 5th DCA 1993) as an example of a case in which it was held that an easement holder did not have the right to construct a dock.
4. Neither Lanier, Cartish, nor Hume was a case, like this one, that involved a dispute between a riparian owner and the state as the owner of the adjacent sovereign lands. Each of them was a case between the owner of the dominant and servient estate. In each case, the issue was whether the owner of the servient estate could interfere with the dominant estate owner's efforts to construct a dock as an incident to the enjoyment of an easement. In each case, the result was dependent upon the specific facts. None of these cases reached the issue presented herewhether the owner of an easement across riparian lands has sufficient title interest in those lands for the purpose of applying for and being allowed to construct a dock upon adjacent sovereign lands.
5. According to Article X, Section II of the Constitution of the State of Florida:
The title to lands under navigable waters... is held by the state, by virtue of its sovereignty, in trust for all the people.... Private use of portions of such lands may be authorized by law, but only when not contrary to the public interest.
It has been recognized that this constitutional provision is a codification of the common law Public Trust Doctrine. See Krieter v. Chiles, 595 So.2d 111 (Fla. 3d DCA *706 1992); Graham v. Edwards, 472 So.2d 803 (Fla. 3d DCA 1985); Board of Trustees v. Levy, 656 So.2d 1359 (Fla. 1st DCA 1995).
6. It has also been recognized that, in the exercise of its fiduciary duties, the Board of Trustees may prohibit the construction of docks on sovereign lands. See, e.g., Krieter, Graham and Board of Trustees, supra. It seems self-evident that, if the Board of Trustees may prohibit the construction of docks on sovereignty lands, a riparian owner has no right to construct a dock on sovereignty lands. Whatever rights a riparian owner enjoys have been held to be subject to the state's ownership of the sovereign lands. Krieter, supra.
7. Consequently, the controlling issue in this proceeding is not whether Petitioner does or does not have riparian rights as an incident of the easement granted it; rather, the issue is whether Petitioner falls within one or another of the three categories set out in Rule 18.21.004(3)(b), F.A.C....
After finding that the Association did not fall under the first two categories of the Rule, the Director explained:
8. The final category in the rule is "persons with sufficient title interest in uplands for the intended purpose." Petitioner argues that it qualifies under this phrase to apply to construct a dock. Both Respondent and Intervenors (Parlatos) disagree and contend that a mere easement holder does not possess sufficient title interest in the upland riparian property to be allowed to construct a dock. They point out that the person who holds "title" to the property has the right to possession of that property while an easement holder has only a non-possessory interest in the property. Kempfer v. St. Johns River Water Management District, 475 So.2d 920 (Fla. 5th DCA 1985). Thus, the argument goes, if an easement holder has only a non-possessory interest, he can not have a sufficient "title" interest under Rule 18-21.004(3)(n) since title by definition is a possessory interest.
9. This argument is reasonable. The intention of including this third category in the rule clearly was to allow someone other than the actual upland riparian owner to apply to use state-owned submerged land. By defining this category as persons with sufficient "title" interest, however, the Board of Trustees has rationally chosen to require an applicant to demonstrate that he has a possessory interest in the upland property. Since Petitioner can not demonstrate that it has a possessory interest, the Respondent is correct in denying its application.
The issue as framed by the D.E.P. is whether the Association, as the holder of recorded contractual rights to construct, maintain and use all docks on lot 10, and, concomitantly, to limit the rights of any owner or lessee of lot 10, is precluded from applying for a permit to construct a dock because the rule requirement of "sufficient title interest in uplands for the intended purpose" means the appellant must have a possessory interest in the upland property.
In the instant case, the language of the Owners' Agreement and the recorded easement burdening lot 10 provides that the lot owners in the Secret Oaks Subdivision were granted rights of pedestrian access to the St. John's River and to "any dock now or hereafter located thereon." The Association was legally entitled to improve, maintain or repair the easement in order to facilitate its use. See Lanier v. Jones, 619 So.2d 387 (Fla. 5th DCA 1993). In the earlier appeal, this court has clearly held that the Association had the right to construct a new dock out from their easement to connect with the main dock.[5] It is plain that certain rights, *707 riparian in nature, that inure to lot 10 have been ceded to the holder of the easement.
"Title interest" is not defined in the rule. The only authority D.E.P. cites for the proposition that a "title interest" must be possessory is the definition of "title" in Black's Law Dictionary:
Title is defined as, "the means whereby the owner of lands has the just possession of his property. The union of all the elements which constitute ownership. Full independent and fee ownership. The right to or ownership in land ..."
Black's Law Dictionary 1331 (5th ed.1979) (citations omitted). The fact that title can be the means whereby an owner has the right of possession does not mean that all possessory interests are title interests or that only possessory interests are title interests. More logically and more likely, "title interest," as used in the rule, means a recorded interest conveyed by an instrument that is of sufficient dignity that it affects the title to the upland property and which entitles the applicant to do that which is the intended purpose of the permit.[6] In this case, there can be no doubt that the Association has recorded contractual rights in lot 10 sufficient to give it the right to build the dock it has sought a permit to construct. It makes no sense for a drafter to choose the phrase "sufficient title interest in the uplands" if the intent simply was to limit the right of application to those with a "right to possession" of the upland. If "sufficient title interest in the uplands" meant only a "right of possession," surely the Agency would have used the term "right of possession." The language we must interpret is plainly broader than the meaning urged by D.E.P.
Apart from the Black's Dictionary definition of "title," the department determinedly offers no reason why a possessory interest is the only possible "title interest," much less why a "possessory" interest would be the minimum "sufficient title interest" for dockbuilding permit application purposes. The only effort the D.E.P. ever made in the direction of an explanation or rationale appears to have been deliberately abandoned.[7] It is worth noting, however, that D.E.P.'s original letter does say that D.E.P. policy has been to consider an easement insufficient "title interest" unless the upland owner consents and allows the state the right to lien the uplands. If this is or was D.E.P.'s policy, it is plainly inconsistent with the notion that a mere easement holder has insufficient "title interest" to be allowed to apply for a permit. An owner's consent is certainly not a conveyance of title and if the upland owner's consent is sufficient, possession of the uplands cannot be the test. It is simply not rational that a lessee of the servient tenement can apply for a permit because of its current right of possession, no matter how temporary, and that the servient owner also could apply for a permit even if he lacks the right of possession and/or the right to build or maintain a dock, yet the holder of the dominant tenement, with the right to build and maintain the dock, has no right to apply for a dock-building permit[8] because it has no right of possession of the uplands. The agency interpretation that "title interest" means "right of possession" creates these completely irrational distinctions. Given the absence of any reason to support the agency's conclusion that the only sufficient "title interest" for seeking the state's permission to build a dock on sovereignty *708 land is a possessory interest in the upland, we find the agency's interpretation illogical and unreasonable.
For the reasons heretofore stated in this opinion, we conclude that the agency's interpretation is clearly erroneous. E.g., Skiff's Workingman's Nursery v. Department of Transportation, 557 So.2d 233 (Fla. 4th DCA 1990); Department of Envtl. Reg. v. Goldring, 477 So.2d 532 (Fla.1985).
REVERSED and REMANDED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] Fla. Admin. Code R. 18-21.004(3)(b) (1996).
[2] See Parlato v. Secret Oaks Owners Ass'n, 652 So.2d 833 (Fla. 5th DCA 1995); Parlato v. Secret Oaks Owners Ass'n, 689 So.2d 320 (Fla. 5th DCA 1997).
[3] Parlato v. Secret Oaks Owners Ass'n, 652 So.2d 833 (Fla. 5th DCA 1995).
[4] Parlato v. Secret Oaks Owners Ass'n, 689 So.2d 320 (Fla. 5th DCA 1997). The D.E.P. was not a party to either case.
[5] The D.E.P. relies on section 253.141, Florida Statutes (1995), which provides:

Riparian rights defined; certain submerged bottoms subject to private ownership.
(1) Riparian rights are those incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing, and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him or her. They are appurtenant to and are inseparable from the riparian land. The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.
D.E.P. contends this provision means that only fee holders or lessees can have riparian rights. We disagree. The statute simply means that riparian rights necessarily run with the upland. It does not suggest that the owner of the upland cannot contractually encumber some or all of these rights. As D.E.P. itself argues, however, the key to the rule is its own terminology. If the rule meant to tie the right to seek a permit to the riparian rights referenced in the statute, it would have done so in terms far simpler than what appears in D.E.P.'s rule.
[6] Cf. § 624.608, Fla. Stat. (1995).
[7] Appellant suggests this was done to avoid an "incipient rule-making" attack.
[8] In at least one case, it appears that an easement interest has been deemed sufficient to obtain the appropriate governmental permits for construction of a dock in the intracoastal waterway. See, e.g., Johnson v. Tlush, 468 So.2d 1023, 1024 (Fla. 4th DCA 1985).