793 So.2d 1158 (2001)
Martin and Linda PARLATO, Appellants,
v.
SECRET OAKS OWNERS ASSOCIATION and State of Florida, Department of Environmental Protection, Appellees.
No. 1D00-1303.
District Court of Appeal of Florida, First District.
September 13, 2001.
*1160 Geoffrey B. Dobson of Dobson & Brown, P.A., St. Augustine, for Appellants.
Teri L. Donaldson, General Counsel and Francine M. Ffolkes, Senior Assistant General Counsel, Department of Environmental Protection, Tallahassee, for Appellees.
PADOVANO, J.
This is an appeal from a final administrative order denying an application to build a dock on the St. Johns River. The Department of Environmental Protection denied the application on the ground that the proposed dock would violate the riparian rights of adjacent landowners. We conclude that the rights of the adjacent property owners must give way to a superior right created by an easement granting all landowners in the subdivision access to the river. Consequently, we reverse the order with instructions to grant the application.
In May 1987, the developer of the Secret Oaks subdivision granted an easement to all of the property owners allowing them access to the St. Johns River. At that time, a dock referred to by the parties as the "main dock" extended from Lot 10 out into the river. Additionally, there was an L-shaped auxiliary dock running parallel to the shoreline from the main dock to the point at which the easement meets the river bank. The easement authorized the landowners to cross over Lots 10 and 11 and to use "any dock now or hereafter located thereon."
A few years after the easement had been recorded, Linda and Martin Parlato offered to purchase Lot 10 from the developer. While the negotiations were in progress, the Parlatos advised other property owners in the subdivision that they would not allow them to use the main dock and that the auxiliary dock would be removed. The developer disapproved of this plan by declining the offer and returning the Parlatos' deposit money.
The Parlatos contacted the developer a few months later and advised him that they had made a mistake and that if he would sell them Lot 10, they would be "good neighbors." They agreed that some of their concerns could be addressed by a modification of the easement. The developer and all of the other members of the Association then entered into the "Secret Oaks Subdivision Owners' Agreement." This agreement provided that all lot owners would have access to the main dock, but that the Association would be responsible for the maintenance and repair of the dock as well as the cost of insurance.
The Parlatos purchased Lot 10 soon after the other members of the Association entered into the agreement clarifying the easement. They attempted to construct a boat lift but they were reportedly told by agents of the Department of Natural Resources that the auxiliary dock was an unpermitted structure and that it would have to be removed. Then, at approximately 5:00 a.m. on April 11, 1992, a work crew employed by the Parlatos removed the auxiliary dock.
When the other landowners discovered that the dock had been taken down, they filed a complaint for declaratory and injunctive relief in St. Johns County. They ultimately prevailed in this litigation. The trial court held that the Parlatos had no legal right to remove the auxiliary dock, that the other members of the Association were entitled to use the main dock on Lot 10, and that they were entitled to reconstruct the auxiliary dock, assuming they could obtain the required permits. In addition to declaring the rights of the parties, the trial judge enjoined the Parlatos from *1161 any future interference with the easement. The Parlatos appealed, but the reviewing court affirmed the order without an opinion. Parlato v. Secret Oaks Owners Ass'n, 652 So.2d 833 (Fla. 5th DCA 1995).
Nineteen months after the final judgment, the Parlatos filed a complaint for supplemental relief in the same case. They alleged that the Association had submitted an application to the Department of Environmental Protection for a permit to construct a new dock extending out from the easement. The Parlatos claimed that the Association did not have the authority to build a new dock, because the construction would violate the terms of the Secret Oaks Subdivision Owners' Agreement.
The trial court denied the request for supplemental relief on the ground that the Association had a legal right to construct a new dock. Again the Parlatos appealed, and again the trial court's decision was affirmed. See Parlato v. Secret Oaks Owners Ass'n, 689 So.2d 320 (Fla. 5th DCA 1997). The Fifth District Court of Appeal held that the proposed construction of a new dock was not prohibited by the easement or by the terms of the Secret Oaks Subdivision Owners' Agreement. The court specifically noted that the declaration of easement referred not only to existing docks but also to docks "hereafter located." Id. at 322.
In November 1994, the Association applied to the Department of Environmental Protection for the necessary permits to build the dock that was the subject of the previous dispute. The Association sought a regulatory wetland resource management (dredge and fill) permit as well as proprietary consent of use to build the dock on submerged land owned by the state. The Parlatos intervened in this proceeding and argued that the Association lacked standing to request consent to construct a dock on submerged land owned by the State.
This objection was based on rule 18-21.004(3)(b), Florida Administrative Code, which states in material part that an "[a]pplication for activities on sovereignty lands riparian to uplands can only be made by and approved for the upland riparian owner, their legally authorized agent or person with sufficient title interest in uplands for the intended purpose." The Parlatos argued that because the members of the Association merely had an easement and did not have title to the land in question, they could not apply for a permit.
The Department of Environmental Protection agreed with the Parlatos on this point and denied the Association's application. However, the Department's decision was reversed in yet another opinion by the Fifth District Court of Appeal. See Secret Oaks Owner's Ass'n, Inc. v. Department of Envtl. Prot., 704 So.2d 702 (Fla. 5th DCA 1998). The court concluded that the members of the Association had acquired riparian rights by virtue of the easement and that those rights were sufficient to give them standing to apply for the permits at issue. The court rejected the Department's argument that a title interest is the equivalent of a right of ownership or possession.
The Department then considered the Association's application on the merits and gave notice of its intent to grant its consent to the construction of the new dock. This action resulted in a formal protest by the Parlatos and by Patricia Ward, an adjacent property owner whose lot is not situated within the subdivision.
While these objections were pending, the Parlatos applied for a permit to reconfigure the main dock on Lot 10. The proposed modification would bring the main dock closer to the dock the Association was planning to build. The Department granted the Parlatos' application for consent of use for the reconfiguration.
*1162 The objections to the Association's application were assigned to the Division of Administrative Hearings and a formal hearing was held on May 10, 1999. Following the arguments, the administrative law judge concluded that the proposed dock would interfere with the riparian rights of the adjacent property owners in violation of rule 18-21.004(3)(a), (c) & (d), Florida Administrative Code. The judge recommended the denial of the dredge and fill permit as well as the application for consent to use submerged lands.
The Department rejected the recommended order in part and concluded that the Association was entitled to a dredge and fill permit. However, the Department agreed that the dock would violate the riparian rights of adjacent landowners, and therefore denied the application for consent of use. The Parlatos appealed the part of the order that was unfavorable to them, and, despite the three prior appearances of this case in the Fifth District Court of Appeal, they elected to proceed with the appeal in this court.[1] The Association filed a cross appeal, and the Parlatos subsequently dismissed their appeal. Our consideration of the case is limited to the issues raised on the cross appeal.
Section 120.68(1) of the Florida Administrative Procedure Act provides that a party who is aggrieved by "final agency action" is entitled to judicial review. The applicable standard of review depends on the nature of the agency's decision. See § 120.68(7), Fla. Stat. (2001). Here, the final order adjudicates an issue of law concerning the riparian rights of the parties.
Appellate courts are generally not required to defer to lower tribunals on issues of law. This principle has been incorporated in the Administrative Procedure Act, and it applies in the review of final agency action as it does in other kinds of appeals. Section 120.68(7)(d), Florida Statutes, authorizes the district court of appeal to "set aside agency action" if it finds that the agency "has erroneously interpreted a provision of law and [that] a correct interpretation compels a particular action." Because the final order was based on a conclusion of law, it is subject to review by the de novo standard.
The determination that the proposed dock would violate the riparian rights of adjoining landowners turns on the Department's application of rule 18-21.004, Florida Administrative Code, the rule that establishes the criteria for obtaining proprietary consent of use. Rule 18-21.004(3) states in pertinent part:
(a) None of the provisions of this rule shall be implemented in a manner that would unreasonably infringe upon the traditional common law riparian rights of upland property owners adjacent to sovereignty lands.
* * *
(c) All structures and other activities must be within the riparian rights area of the applicant and must be designed in a manner that will not restrict or otherwise infringe upon the riparian rights of adjacent upland riparian owners.
(d) All structures and other activities must be set back a minimum of 25 feet from the applicant's riparian rights line. Marginal docks may be set back only 10 feet. There shall be no exceptions to the setbacks unless the applicant's shoreline frontage is less than 65 feet or a sworn affidavit of no objection is obtained *1163 from the affected adjacent upland riparian owner, or the proposed structure is a subaqueous utility line.
The easement is not wide enough to allow for the construction of a dock that conforms to the setback requirements of subdivision (3)(d) of the rule. Additionally, the Department found that a new dock extending out from the easement would interfere with the use and enjoyment of the adjoining property in violation of subdivisions (a) and (c). Hence, the Department concluded that the proposed dock would "restrict or otherwise infringe on the riparian rights of adjacent upland riparian owners."
This conclusion assumes that the riparian rights of the adjoining landowners can be determined by the rule alone, but that is not the case. Here, the parties were bound by an easement that alters the rights they might have otherwise asserted under the rule. The easement allowing all Secret Oaks landowners access to the river was recorded and it was subsequently approved and clarified by an agreement between all members of the Association. The Parlatos purchased Lot 10 subject to the easement as modified by the agreement.
It follows that any rights the Parlatos may have under rule 18-21.004(3) are subordinate to the rights created by the easement. The rule cannot have the effect of conferring a right that has already been relinquished, yet that is the effect of the final order. In essence, the Department said that the members of the Association have an easement allowing them access to the river, but that they cannot build a dock from the easement into the river, because that would violate the rights of adjoining landowners. This conclusion defeats the very point of the easement.
Our holding that the rights created by the easement are superior to those established by the rule is supported by the decision of the Fifth District Court of Appeal in the previous litigation on the issue of standing. It is true, as the Department observed in the final order, that the Fifth District did not address the merits of the application for consent of use. However, the reasoning of the court's opinion reveals the error of the Department's conclusion. In support of its conclusion that the property owners had standing to apply for a permit to build the dock, the Fifth District said, "[i]t is plain that certain rights, riparian in nature, that inure to lot 10 have been ceded to the holder of the easement." Secret Oaks Owner's Ass'n v. Department of Envtl. Prot., 704 So.2d at 706-707. The construction of the dock could not interfere with the Parlatos' riparian rights as the Department concluded, if those rights were previously "ceded" to the Association.
We recognize that the easement did not affect the riparian rights of Patricia Ward, because her property, although adjacent to Lot 10, is not situated within the subdivision. The easement was limited to members of the Secret Oaks Owners Association and it was recorded after Mrs. Ward purchased her property. However, the evidence presented at the hearing does not support a finding that the proposed dock would violate Mrs. Ward's riparian rights under subdivisions (3)(a) or (c) of the rule. At best, the evidence shows that her rights might be violated if the dock is used in a way that would not be authorized by the Department.
Mrs. Ward proved that if five or six boats were tied to the dock some of them would cross the line extending from the boundary of her property into the river. This may be a valid concern, but an objection based on this ground is premature. The Association applied to build a dock with a single boat slip. It is plain from the record that if the dock includes only a single boat slip as requested in the application, *1164 it will not interfere with Mrs. Ward's riparian rights.
The fact that the proposed dock will not conform to the setback requirements is not alone sufficient to establish a violation of Mrs. Ward's rights. Rule 18-21.004(d) allows for an exception to the setback requirements if "the applicant's shoreline frontage is less than 65 feet or a sworn affidavit of no objection is obtained from the affected adjacent upland riparian owner." Exceptions are routinely granted under this provision if the lot is too narrow and if the dock and related structures do not extend over the line extending from the boundary of the adjacent lot into the water.
For these reasons, we conclude that the application should have been granted. The Department erred as a matter of law in holding that the proposed dock would violate the riparian rights of the Parlatos and there is no evidence in the record to support a finding that it would violate the rights of Mrs. Ward. Hence, we reverse with instructions to grant the application.
Reversed.
WOLF and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] A party aggrieved by a final administrative order may seek judicial review in the appellate district where the agency maintains its headquarters, where a party resides, or as otherwise provided by law. § 120.68(2)(a), Fla. Stat. (2000).