SALTER, J.
This appeal is taken from a final administrative order determining that the appellants (a licensed general contractor and his company) violated the statutes regulating the practice of architecture in Florida by offering and rendering non-exempt architectural services for a “design-build” project. The issue is strictly a question of law, and it is apparently one of first impression regarding the application of the exemption governing such projects. We reverse the final order and vacate the fine and costs imposed against the appellants.
The pertinent facts were undisputed. The appellant, Mr. Diaz, is a licensed general contractor and president of appellant Diaz & Russell Corporation (D & RC). Mr. Diaz and D & RC are not registered or certified to practice architecture. In 2010, Mr. Diaz submitted a written design-build proposal for a small commercial job.[1] The written proposal did not identify a specific Florida-licensed architect hired by Mr. Diaz to prepare the architectural drawings for the project, but the architect was identified on the drawings prepared and submitted to the municipal building department.
The Board of Architecture and Interior Design (Board) filed a complaint against Mr. Diaz and D & RC for practicing architecture without a certificate of authorization as required by sections 481.219 and 481.223, Florida Statutes (2010). Mr. Diaz and D & RC claimed that their design-build proposal and services were authorized by a specific statutory exemption in section 481.229(3), Florida Statutes (2010):
(3) Notwithstanding the provisions of this part, a general contractor who is certified or registered pursuant to the provisions of chapter 489 is not required to be licensed as an architect when negotiating or performing services under a design-build contract as long as the architectural services offered or rendered in connection with the contract are offered and rendered by an architect licensed in accordance with this chapter.
At the hearing before an administrative law judge, Mr. Diaz and his company were not represented by counsel. The Board introduced as “expert testimony” the testimony of an architect who (a) was a currently-serving and previous member of the Board and (b) was hired by the owner of the project in question after Mr. Diaz and his company were terminated by the owner.[2] The Board member and architect *664 (who is not a licensed general contractor or attorney) offered this testimony:
Q. Is it your understanding that Chapter 481.229, there is an exception for a general contractor to enter into a design build contract?
A. Yes.
Q. Okay. Under that exception, can the general contractor himself offer the architectural services?
A. No.
Q. Okay. In any design build contract must it list the Florida licensed architect that’s going to provide those services?
A. Yes.
The administrative law judge then adopted the architect/witness’s conclusions of law (and those conclusions were in turn approved and adopted by the Board and the Department of Business and Professional Regulation in the Final Order) that “the Florida licensed architect was not identified in the written proposal offering the architectural services” and thus that “the design-build exception is not applicable to the instant case.” Mr. Diaz and D & RC were fined a total of $10,000.00, and costs of $6,867.53 were assessed against them.

Analysis

The requirements of the design-build exemption in section 481.229(3) were satisfied in this case. As the findings of fact correctly determined: Mr. Diaz was a Florida-licensed general contractor and President of D & RC; “Mr. Diaz hired an architect to prepare the architectural drawings for the project;” and “No dispute exists that the written proposal was a design-build contract offering architectural services.” The Board’s position, adopted by the administrative law judge, is that a licensed general contractor issuing a written proposal for a design-build project must identify the specific architect to work on the project at the time the proposal is made, not when the architect to perform the work is employed or assigned by the contractor, or when plans prepared by the architect are submitted to the owner or permitting authorities.
We conclude that the Board’s and administrative law judge’s interpretation of the statute imposes requirements that are not found in the statutory design-build exemption. Though mindful of our obligation on review to afford the Board’s interpretation of the statute “great deference,” Verizon Fla., Inc. v. Jacobs, 810 So.2d 906, 908 (Fla.2002), it is also our duty to reverse a conclusion of law based on an erroneous interpretation of a statute. § 120.68(7)(d), Fla. Stat. (2013). Our review of that interpretation is de novo. Parlato v. Secret Oaks Owners Ass’n, 793 So.2d 1158, 1162 (Fla. 1st DCA 2001).
Design-build contracts have been developed for a salutary purpose: an owner enters into a single contract, usually with a general contractor (who in turn employs or enters into a contract with a licensed architect), rather than dual contracts with an architectural firm and a general contractor. The Design-Build Institute of America touts the method:
Design-build is an integrated approach that delivers design and construction services under one contract with a single point of responsibility — and its use is growing rapidly. Owners select design-build to achieve best value while meeting schedule, cost and quality goals.[3]
*665 The statutory exemption in section 481.229(3) recognizes such contracts, but requires that the “design” side of design-build services be provided by a licensed architect. The statute does not explicitly require the contractor to identify an individually-named architect before offering the design-build services. The exemption requires that both the “rendering” and “offering” of architectural services associated with a design-build project be provided by a licensed architect. § 481.229(3). The Board’s construction of the exemption language purports to mandate that, in order to meet the exemption’s requirement that a licensed architect “offer” the architectural services of a design-build project, the identity of the architect must actually be specified in the design-build contract; otherwise the contractor faces civil and criminal liability under section 481.223, Florida Statutes (2010).
However, the exemption expressly authorizes a licensed contractor to “negotiate” a design-build contract. § 481.229(3). The Board’s construction would effectively negate this express authorization. From a practical perspective, for a licensed contractor to “negotiate” a design-build contract with an owner, the contractor is required to make, and receive, offers and counteroffers related to all components of the contract. During such “negotiations,” the scope of the project — and, therefore, the architect performing the project’s design components — -can change such that the identity of the architect ultimately performing the project’s architectural services may not be known at the time the contract is executed. As long as the negotiating contractor is neither offering to render, nor actually rendering, architectural services related to such design-build contracts, the exemption’s requirements are met.[4]
The Board’s interpretation of the exemption statute — requiring the architect to be identified in the contract — is erroneous. Not only does the Board’s interpretation graft a requirement into the exemption not required by the statute’s language, the interpretation also effectively renders meaningless the exemption’s provision expressly authorizing licensed contractors to “negotiate” design-build contracts. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) (“all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with another.”) (citations omitted). See also Arza v. Fla. Elections Comm’n, 907 So.2d 604, 606 (Fla. 3d DCA 2005) (“It is axiomatic that an agency’s interpretation of a statute that it is charged with administering is to be given great weight and should not be overturned unless clearly erroneous. ‘However, a court need not defer to an agency’s construction or application of a statute if special agency expertise is not required or if the agency’s interpretation conflicts with the plain and ordinary meaning of the statute.’ ”) (citations omitted).
Finally, it bears noting that section 481.2055, Florida Statutes (2013), expressly provides that the Board may, consistent with the requirements of section 120.536, Florida Statutes (2013), promulgate admin *666 istrative rules to implement the relevant provisions of chapter 481. Given the ubiquity of design-build contracts in Florida, either the legislative,[5] or the formal rule-making,[6] process seems the appropriate forum to develop mandatory disclosure requirements in such contracts. In the absence of explicit amendment or rules imposing such requirements, however, the Board’s interpretation in the present case must be overturned.
Reversed and remanded with directions to vacate the final order, fine, and imposition of costs.

. D & RC was to construct a partitioning wall in a commercial building in Miami to accommodate a tenant. The total cost was $5,900.00.

. The Board established that the owner of the building in question terminated Mr. Diaz and D & RC from the project, and that the municipal building department rejected the architectural drawings submitted by the licensed architect hired by Mr. Diaz. Those facts may bear on the competence of the architect hired by Mr. Diaz, but they are not pertinent to the single legal issue presented.

. Website of Design-Build Institute of America, http://www.dbia.org/Pages/student-academia.aspx (last visited March 20, 2014).

. This reading is consistent with both section 481.223(l)(a), Florida Statutes (2010), which prohibits a person from knowingly practicing architecture unless the person is an architect, and section 481.203(6), Florida Statutes (2010), which defines architecture as "the rendering or offering to render services in connection with the design and construction of a structure ...." (Emphasis added).

. See, e.g., 63 PA. Cons.Stat. § 34.15(9) (2013) (“a design-build entity ... may offer design-build services if the architectural services in the design-build process are provided in accordance with the following .... (iv) The contract between the design-build entity and the client shall set forth the name of the architectural firm which will be contractually responsible to the design-build entity for providing architectural services.”); see also Neb. Rev. Stat. § 13-2907(10)(b)-(c) (2013) ("(b) At the time of the design-build offering, the design-builder will furnish to the governing body of the political subdivision a written statement identifying the architect ... who will perform the architectural ... work for the design-build project; (c) The architect ... engaged by the design-builder to perform the architectural ... work with respect to the design-build project ... may not be removed by the design-builder prior to the completion of the project without the written consent of the governing body of the political subdivision ....”); Neb. Rev. Stat. Ann. § 13-2912 (2013) ("A design-build contract ... may be conditioned upon later refinements in scope and price and may permit the political subdivision in agreement with the design-builder ... to make changes in the project without invalidating the contract.”).

. See, e.g., 68 Ill. Admin. Code tit. 68, § 1150.85(a)(2)(B) (2009) ("At the time of offering services, a written disclosure shall be given to the client by the entity identifying the architect who will be engaged by and is contractually responsible to the entity offering design/build project services.”).